STATE OF NORTH CAROLINA v. DON WESLEY KING

No. 8421SC837

(Filed 2 July 1985)

**Bills of Discovery § 6— ballistics report—required disclosure by defendant—prejudicial error**

The trial court had no authority under G.S. 15A-905(b) to require that a copy of the report of a ballistics expert hired by defendant be furnished to the district attorney where the record did not show that defendant ever intended to introduce the report or put the expert on the stand; furthermore, defendant was prejudiced by the court's order since it permitted the State to know more about this critical aspect of defendant's case than it was entitled to know and enabled the prosecutor improperly to imply to the jury that defendant's ballistics expert agreed with the State's expert.

Judge ARNOLD dissents.

APPEAL by defendant from *Beaty, Judge.* Judgment entered 22 February 1984 in Superior Court, FORSYTH County. Heard in the Court of Appeals 12 March 1985.

Defendant appeals from his convictions for discharging a firearm into an occupied building pursuant to G.S. 14-34.1, assault with a deadly weapon with intent to kill inflicting serious bodily injury pursuant to G.S. 14-32, and possession of a firearm by a felon pursuant to G.S. 14-415.1.

The State's evidence tended to show that: At 7 o'clock in the morning on 1 September 1983, while in the den of her house in Winston-Salem, Mrs. Gail Voss Butler was shot by a pistol bullet that entered the house through the den window. A few minutes earlier a neighbor of Mrs. Butler's and the neighborhood paper boy saw a man in work clothes get out of a dark colored station wagon that had wood grain sides and a large white stain, and walk toward the Butler house. Neither witness saw anyone else in the vehicle. Some weeks earlier defendant had worked on Mrs. Butler's house and he visited her several times thereafter. A few days before the shooting, Mrs. Butler's house was robbed of several items, and during one of his visits defendant showed her how the thief entered via the sliding glass door and told her how to secure the door thereafter. Defendant owned a dark colored, wood grained Ford station wagon and worked at a carpentry shop situated several miles from Mrs. Butler's house. Jimmy Lee White, Sr. worked with defendant and was at the shop around

7:15 o'clock the morning of the shooting when defendant arrived in his station wagon, driven by his girlfriend. During that morning defendant told White his ears were ringing from firing a gun earlier, and he pulled a pistol out of a paper bag and let White examine it. The pistol had three shells in it, one of which had been fired, and had a tiger on the grip. White told defendant not to leave the gun with the work tools and he left it in White's truck when they went to lunch. That afternoon when the police asked White whether he had seen defendant with a gun that day he denied that he had, because he did not want to get defendant, a paroled felon, in trouble. White gave the pistol to the police the next morning and told them the defendant had it the day before. The pistol was examined by the State's ballistics expert, who testified that was the weapon that shot Mrs. Butler.

Defendant testified in substance that: He did not shoot Mrs. Butler, was being driven to work by his girlfriend at 7 o'clock when the shooting occurred and was there when White arrived a few minutes later. The tiger handled pistol was not his but White's, and White tried to sell it to him the morning Mrs. Butler was shot, after trying to get his girlfriend to buy it the day before. His girlfriend testified that defendant was not out of her sight on the morning of the shooting from the time he got up at 6:30 until she dropped him off at work a few minutes after 7 o'clock, and that White tried to sell the pistol to her the day before.

Before trial defendant moved that a ballistics expert of his choosing be permitted to examine the pistol. In granting the motion the court ordered that a copy of the examining expert's report be sent to the District Attorney, and the District Attorney received the report before the trial, though the defendant never decided to introduce the report into evidence or have the maker of it testify as a witness. In presenting the State's case the prosecutor questioned a police witness about being ordered by the court to take the pistol and bullet to a ballistics expert engaged by defense counsel.

*Attorney General Edmisten, by Assistant Attorney General Kaye R. Webb, for the State.*

*Appellate Defender Stein, by Assistant Appellate Defender Robin E. Hudson, for defendant appellant.*

PHILLIPS, Judge.

Since no witness saw defendant shoot Mrs. Butler or identified him as being at the scene near the time she was shot, the ballistics opinion evidence, which was not as unequivocal and direct as we have seen, was crucial both to the State and the defendant. The State's case on this pivotal point was erroneously strengthened to defendant's irreparable prejudice, we think, when the prosecutor deliberately implied to the jury that defendant's ballistics expert, who did not testify, agreed with the State's expert. Though the prosecutor's acts were his responsibility and inexcusable, they could not have happened if the court had followed the law in permitting defendant's expert to examine the gun. G.S. 15A-905(b) provides in pertinent part that where objects in the State's possession are examined or tested pursuant to a defendant's motion that "the court must, *upon motion of the State*, order the defendant to permit the State to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case . . . *which the defendant intends to introduce* in evidence at the trial or which were prepared by a witness whom the defendant *intends* to call at the trial." (Emphasis supplied.) Since the record does not show that defendant ever intended to introduce the report or put the preparer of it on the stand, the judge had no authority to require that a copy of the report be sent to the District Attorney. *State v. Miller*, 61 N.C. App. 1, 300 S.E. 2d 431 (1983). The purpose of G.S. 15A-905(b) is not to inform the State why scientific evidence will not be offered by the defendant, but to acquaint it with scientific evidence that will be offered during the trial. Thus, the State had the undue advantage of knowing before presenting its own ballistics evidence that it probably would not be attacked or refuted by defendant's ballistics evidence. Whether this knowledge resulted in the State's evidence on this crucial point being less equivocal than it would have been otherwise, we do not know; but that the State as a consequence of an order entered in violation of a statute knew more about this critical aspect of defendant's case than it would have known if the law had been obeyed entitles defendant to a new trial on all the charges, as the gun and its use or possession was an essential element of each.

New trial.

Judge COZORT concurs.

Judge ARNOLD dissents.